# Reeves *v*. Henderson-Boyd Lumber Company.

## *Injury to Servant.*

(Decided April 13, 1911.  55 South. 191.)

1. *Master and Servant; Injury to Servant; Issue and Proof.*— Where the complaint imputed negligence proximately causing an injury to the weakness or defective condition of a trestle, its allegations are not supported by proof that a train containing twice as many cars as should be contained in a train on defendant's railway, was passing over a part of the railway where there was a dip in the track, and that a car before reaching the trestle buckled, and was thrown across the track, and before stopping struck parts of the trestle so impairing its strength as that other cars and the engine fell through, since it constituted a variance.

2. *Same.*—A count alleging negligence of a superintendent in ordering an engineer to haul too many cars, and averring that an engine was ascending an incline beyond a trestle when a middle car left the track is not supported where the only evidence as to hauling cars was the engineer's testimony that eight or ten cars constituted a train, and that he just picked up the cars, that his duty was to carry empties, and that he was picking them up as a part of his duty, and that the accident happened after picking up the extra cars, nor where, as to the manner of the accident all the evidence descriptive thereof was to the effect that the engine did not cross the trestle and was not, when it fell, ascending an incline since there was a variance.

3. *Same.*—Where the complaint ascribed the injuries to the negligent operation of the train by the engineer, the word "operation"

[Reeves v. Henderson-Boyd Lumber Company.]

means management or control, and presupposes the existence of the subject of operation, but does not extend to negligence in the composition of the train, and evidence tending to show only negligence in the composition of the train does not support such an allegation.

4. *Same.*—Where a count avers that a train was run upon a trestle at a high and dangerous rate of speed, and was thereby caused to jump or be thrown and fall to the ground, it is not supported by evidence tending to establish the fact that a car in the train jumped the track before reaching the trestle, causing a wreck on the trestle.

5. *Pleading; Construction.*—Pleadings are always construed most strongly against the pleader.

APPEAL from the Coffee Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by Sam Reeves against the Henderson-Boyd Lumber Company for damage for injury to him while in their employment. Judgment for the defendant, and plaintiff appeals. Affirmed.

O. C. DOSTER, J. F. SANDERS and H. L. MARTIN, for appellant. After discussion of the evidence appellant concludes that the court erred in giving the general charge for the defendant as to the entire complaint, and as to the third count thereof.—97 Ala. 161; 67 Ala. 13; 94 Ala. 636; 22 Ala. 292; 20 A. & E. Enc. of Law, 67; 26 Cyc. 971; 1087, 1092, 1125, and 1282. Counsel discuss the exceptions to evidence, but without further citation of authority.

JOHN H. WILKINSON, for appellee. The court is not in error in giving the affirmative charge.—*Wheeler v. McGuire,* 86 Ala. 398; *Patterson v. Neal,* 135 Ala. 466; 31 Cyc. 1322. On these authorities it must also be held that the evidence did not support the complaint. One extending an invitation to board the train must have authority to do so, or be one in control of the train.— *Thompson v. N. C. & St. L.,* 160 Ala. 590; *Brown & Co. v. Scarbrough,* 97 Ala. 316; *Broslin v. K. C.*

*M. B. R. R. Co.,* 114 Ala. 398; 31 Cyc. 817.    Plaintiff was a mere licensee.—*B'ham R., L. & P. Co. v. Sawyer,* 156 Ala. 199; *McCauley v. T. C. R. R. Co.,* 93 Ala. 356.

McCLELLAN, J.—The plaintiff (appellant) was injured by the derailment of a log train used by defendant in its general business of manufacturing lumber.

The only evidence of the physical cause of the derailment was that when the train, containing double the number of cars of which, the testimony shows, a train on that railway should be constituted, was passing over that part of the railway south of and upon and north of a trestle, towards which, from each direction, the track was downgrade, a car therein, before reaching the trestle, "buckled," was thrown across the track, and before it stopped struck parts of the trestle, so impairing its strength as that other cars and the engine fell. The result is that there was no evidence to support the material averments of counts 2, 3, 6, 7, 8, 9, 12, and 13, all of which impute, as a main feature, negligence, proximately causing the injury, to the weakness or defective condition of the trestle. To repeat there was no evidence tending to show that the weakness or defective condition or construction of the trestle caused the injury in any other than a remote sense.    A trestle that succumbs to the impact, upon its supports, of an *already* (before reaching it) derailed car or train, cannot be said to be defective, in condition or original construction.    Such a test of its stability is not to be reasonably anticipated, so as to require a different construction or state of repair from that required to make it safe for the passage of trains over it.    Whether guard rails, at either approach, should be installed, is of course not

within the hypothesis stated, viz., the giving way of a trestle from the impact, against vital parts of the structure, of a previously derailed car or train or engine.

The evident cause for the buckling of the car, which was in or about the center of the train, was the pressure forward by the engine and the weight of it and the cars on the decline, and the pressure, backward, by the cars already on the opposite incline; the theory of the plaintiff being that the excess, in number, of cars produced the buckling, whereas, had the train been made up of only the number of cars properly constituting such a train, the backward pressure would not have been sufficient to cause the buckle.

Amended count 4 ascribes the injury, for proximate cause, to the negligence of a superintendent, whose name was unknown to plaintiff, in instructing the engineer to haul too many cars. The only evidence on the subject of hauling cars was that of the engineer. He testified: "Eight or nine cars constitute a train. I just picked up the cars. My duty was to carry empty cars, and I was picking them up as a part of my duty. The accident happened after picking up the extra cars."

Obviously, this testimony, alone, did not tend to support in any degree the negligence charged in count 4. It does not appear from it, even by inference, that the engineer was instructed by any one to extend this train, with empties, till it contained 18 cars—9 in excess of the proper number. No *instruction* by a superintendent could be implied from the quoted general statement of the engineer. *Non constat* his duty, in this particular, might have been fixed and declared by the express action of the governing body of the corporation. Furthermore, the pleader, in this count, undertook to

describe the quo modo of the derailment with great particularity. Among other averments in this regard, it was alleged, in substance, that the engine was across the trestle and was ascending the incline beyond it when the middle cars shook, vibrated, or jumped. There is no evidence supporting this averment. All of the evidence, descriptive of the event, was to the effect that the engine did not cross the trestle and was not, when it fell below, ascending the incline.

Counts 1, 10, and 11 ascribe the injury to the negligent "operation of the train by the engineer." The pleader evidently took the view that "negligent operation" of the *train* did not include the negligent (as alleged) composition of the train by putting in it an excessive number of cars.

While very general averments of negligence in complaints are justified by the rulings of this court, yet the terms in which pleaders undertake to state their causes of action are always subject to the familiar rule of construction that pleadings must be construed most strongly against the pleader.

Had the allegation imputed negligent operation of the railroad, it may be the averment would have comprehended the negligent constitution of a *train* thereon, wherefrom injury resulted.

*"Operation"* signifies management, conduct.—Webster's New International Dictionary; 6 Words & Phrases, p. 4992. As employed in this pleading, it presupposed the existence of the subject—the train—of *operation*. It excluded any idea of the construction or making up of the train. In effect, as here used, the averment is: You negligently controlled, managed, conducted, the train, to plaintiff's injury. So interpreted, these counts did not charge the negligence imputed elsewhere in the complaint, viz., that the train

was negligently composed. Accordingly, the evidence before summarily stated, in respect of the elsewhere alleged negligent *composition* of the train, did not tend to support the averment of negligent *operation* of the train.

The remaining count is that numbered 5. Therein the gist of the charge of negligence is that the train was run upon the trestle, located as described before, "at a high and dangerous rate of speed, and that when it ran upon said trestle was thereby (high and dangerous rate of speed, we explain) caused to jump or be thrown from the track and to fall to the ground."

From the previous statement of the indisputable effect of the evidence, it readily appears that the derailment was not caused by the speed of the train when it was "upon" the trestle, but that it resulted from the buckling of the car more than 100 feet before the car reached the trestle. Reeves, himself, testified that the "wreck occurred on the trestle;" that "it (trestle) gave way and the engine fell in." That statement accords with the other evidence in the case, but it did not conflict with the other evidence, even that by plaintiff's witnesses, describing the physical cause of the wreck. Nor did the quoted statement tend to establish a condition of the derailment opposed to the view that the buckling of the car, before reaching the trestle, producing the damnifying effect, viz., the wreck on the trestle.

There are other questions discussed by counsel; but their consideration is unnecessary, and is not undertaken, since the failure of proof in the material particulars indicated entitled the defendant to the affirmative charge given it, upon request, by the court.

The judgment is affirmed.

Affirmed.

SIMPSON, MAYFIELD, and SAYRE, JJ., concur.